**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES R. LUPTON, III, | ) | CASE NO. 1:15-CV-1068 |
| | ) | |
| Plaintiff, | ) | JUDGE GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | VECCHIARELLI |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND** |
| Defendant. | ) | **RECOMMENDATION** |

Plaintiff, James R. Lupton, III, ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying his applications for Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be REVERSED and REMANDED for proceedings consistent with this opinion.

## I. PROCEDURAL HISTORY

On May 31, 2013, Plaintiff filed his applications for POD, DIB, and SSI, alleging a disability onset date of January 29, 2012. (Transcript ("Tr.") 10.) The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.*) On December 10, 2014, an ALJ held Plaintiff's

hearing. (*Id.*) Plaintiff participated in the hearing, was represented by counsel, and testified. (*Id.*) A vocational expert ("VE") also participated and testified. (*Id.*) On January 8, 2015, the ALJ found Plaintiff not disabled. (Tr. 23.) On March 27, 2015, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1.) On May 28, 2015, Plaintiff filed his complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 10, 12, 15.)

Plaintiff asserts the following assignments of error: (1) The ALJ's assessment of nurse Patricia Grippi's opinion was not supported by substantial evidence, and (2) the ALJ's residual functional capacity (RFC) finding lacks the support of substantial evidence because it did not properly account for all of Plaintiff's limitations.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born in April 1968 and was 45-years-old on the alleged disability onset date. (Tr. 21.) He had at least a high school education and was able to communicate in English. (*Id.*) He had past relevant work as a material handler, commercial cleaner, and construction laborer. (*Id.*)

### B. Medical Evidence

#### 1. Medical Reports

Plaintiff was admitted to the hospital on July 11, 2012, for alcohol withdrawal and seizures. (Tr. 309.) Healthcare providers administered Ativan and recommended continued supportive care and short-term rehabilitation. (Tr. 309-10.) Plaintiff was

2

diagnosed with acute alcohol withdrawal, chronic alcoholism, seizure episode secondary to alcohol, and uncontrolled diabetes. (*Id.*)  On July 19, 2012, Plaintiff insisted on being discharged home despite his physician's warning that he lacked the physical stability to care for himself. (Tr. 310.)  At the time of discharge, Plaintiff was not suicidal. (*Id.*)

On July 25, 2013, Plaintiff presented to the emergency department due to auditory hallucinations and suicidal ideation. (Tr. 459.)  Plaintiff exhibited circumstantial speech and expressed suicidal ideation with a plan to jump from a bridge, as well as a desire to kill people who broke into his home. (*Id.*)  He described increased auditory hallucinations, suicidal thoughts, and feelings of depression and anxiety. (*Id.*)  Plaintiff was drinking alcohol daily, but had stopped doing so a few days prior to his hospital admission. (*Id.*)  Plaintiff's short-term memory, ability to focus, and judgment were impaired. (*Id.*)  His diagnoses were alcohol dependence, substance-induced mood disorder, and post-traumatic stress disorder (PTSD). (*Id.*)  Healthcare providers started Plaintiff on medication, and he improved significantly thereafter. (Tr. 461.)  During the course of his hospitalization, Plaintiff was never a threat to himself or others and was not psychotic. (*Id.*)  He was cooperative, engaged, hopeful, and optimistic. (*Id.*)  He was discharged on August 6, 2013. (*Id.*)  At the time of discharge, he was pleasant and well-oriented. (*Id.*)  His thought process was goal-directed, and he denied auditory or visual hallucinations as well as suicidal and homicidal ideation. (*Id.*)  Plaintiff's insight and judgment were good and his cognition was intact. (*Id.*)

In November 2013, Plaintiff underwent a psychological consultative examination

3

with Thomas Lechowick, M.A. (Tr. 646-48.)  Plaintiff reported memory issues and auditory and visual hallucinations. (Tr. 647.)  On physical examination, the psychologist described Plaintiff's hair as disheveled. (*Id.*)  Plaintiff exhibited poor long- and short-term memory. (Tr. 648.)  His affect was anxious and tense, his mood was depressed, and his insight and judgment were limited. (*Id.*)  The psychologist diagnosed alcohol induced persisting amnestic disorder, alcohol dependence, and dysthymic disorder. (*Id.*)  The psychologist indicated that it was very difficult to obtain a clear personal, vocational, or medical history from Plaintiff. (*Id.*)  The psychologist assigned a GAF score in the rage of 41 to 51, representing serious symptoms.[1] (*Id.*)

On January 8, 2014, Patricia Grippi, M.S.N., A.P.R.N., examined Plaintiff. (Tr. 718.)  Plaintiff was feeling depressed, anxious, and stressed. (*Id.*)  He was homeless and living in a friend's van. (*Id.*)  His sleep was poor, and he experienced auditory and visual hallucinations as well as passive suicidal ideation. (*Id.*)  Plaintiff reported a history of substance abuse. (*Id.*)  Nurse Grippi described Plaintiff's grooming as very poor. (Tr. 719.)  Plaintiff's mood and affect were anxious, and his eye contact was fair. (*Id.*)  His speech was pressured and he exhibited flights of ideas. (*Id.*)  Nurse Grippi diagnosed major depression with psychosis, alcohol induced dementia, and PTSD. (*Id.*)  She opined that Plaintiff was at moderate risk of harm to himself because of his lack of medical care and poor living environment. (*Id.*)  She instructed him to visit his physician

---

[1] The GAF scale incorporates an individual's psychological, social, and occupational functioning on a hypothetical continuum of mental health illness devised by the American Psychiatric Association.  A GAF score between 41 and 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning.

to treat his diabetes and seizure disorder and referred him for therapy. (*Id.*)

In March 2014, Plaintiff returned to nurse Grippi and reported improved sleep and less feelings of depression. (Tr. 684.) He denied psychosis and suicidal ideation and reported that Seroquel relieved his hallucinations. (*Id.*) Plaintiff had stopped taking Seroquel, however, because he was having nightmares and a friend instructed him to stop taking the medication. (*Id.*) In September 2014, Plaintiff reported to nurse Grippi that he had poor memory, increased feelings of depression and anxiety, and flashbacks to a motor vehicle accident involving the death of his girlfriend. (Tr. 817.) He had moved into his own apartment and was not drinking alcohol, aside from an occasional beer. (*Id.*) Nurse Grippi indicated that Plaintiff was at low risk of harm to himself or others. (*Id.*) During October 2014, Plaintiff reported to nurse Grippi that he was depressed and continued to have memories of the car accident. (Tr. 804.) He was often bored and had "nothing to fill his time." (*Id.*) The nurse suggested that Plaintiff become more involved in Alcoholics Anonymous meetings or seek out volunteer work. (*Id.*)

In November 2014, nurse Grippi completed an assessment of Plaintiff's ability to perform work-related activities. (Tr. 798-99.) She opined that Plaintiff had extreme limitations in his personal habits; ability to perform complex, repetitive, or varied tasks; and ability to behave in an emotionally stable manner. (*Id.*) Plaintiff was markedly limited in his daily activities; ability to maintain attention and concentration for extended periods; respond appropriately to supervision, work pressures, and changes in the work setting; use good judgment; and perform simple tasks. (*Id.*) He was moderately limited

5

in his ability to relate to others; sustain a routine without special supervision; and understand, remember, and carry out instructions. (Tr. 798.)

### 2. Agency Reports

On August 20, 2013, clinical psychologist Richard Halas, M.A., conducted a psychological examination of Plaintiff. (Tr. 514-18.) Plaintiff explained that he lived in a homeless shelter and described a history of substance abuse issues. (Tr. 514-15.) He was no longer abusing substances, was involved in Alcoholics Anonymous, and had been sober for approximately one month. (Tr. 517.) Plaintiff was casually dressed, but disheveled and generally unkempt. (Tr. 515.) The psychologist described Plaintiff's dress and grooming as poor and below average. (*Id.*)

During the examination, Plaintiff was cooperative and appropriately motivated. (*Id.*) Plaintiff's speech was slow, but he provided short, specific, and goal-oriented responses. (*Id.*) Plaintiff's eye contact was poor, his affect was flat, and his mood was depressed. (Tr. 516.) He reported crying spells and feeling hopeless, helpless, and worthless. (*Id.*) He was tearful and displayed high levels of anxiety during the examination. (*Id.*) Plaintiff's long and short-term memory were good, but his insight and judgment were poor. (Tr. 516-17.) Halas diagnosed major depression, generalized anxiety disorder, and polysubstance abuse in early remission. (*Id.*) In terms of Plaintiff's ability to function, the psychologist opined:

- Plaintiff would have "some problems" in understanding, remembering, and carrying out instructions. Plaintiff's estimated intellectual levels were in the low to average range. Plaintiff had been in regular classes and maintained below average grades while in school and had worked competitively. (Tr. 518.)

- Plaintiff would have "little or no difficulty" in maintaining attention, concentration,

6

persistence, and pace to perform simple and multi-step tasks. During mental status testing, Plaintiff was able to concentrate and recall six digits forward and three of three items after five minutes. He was able to do simple calculations and "serial 7's." (*Id.*)

- Plaintiff would have "significant problems" responding appropriately to supervision and coworkers in a work setting. Plaintiff's symptoms of depression and anxiety were likely to increase quickly under the pressure of full-time work. (*Id.*)

- Plaintiff would have "moderate problems" in his ability to respond appropriately to work pressures in a work setting. Plaintiff had symptoms of anxiety without the pressures of a work setting and was likely to become highly nervous under the pressures of a competitive work environment. (*Id.*)

State agency psychologist Irma Johnston, Psy.D., conducted a review of the record on September 7, 2013. (Tr. 104-06.) Dr. Johnston's assessment set out the following:

- Understanding and memory limitations: Dr. Johnston opined that Plaintiff would not be limited in his ability to remember locations and work-like procedures, understand and remember short and simple instructions, or to understand and remember detailed instructions. (Tr. 104.) Dr. Johnston concluded, however, that Plaintiff would have some problems in the area of understanding and memory due to his low-average intellectual abilities. (Tr. 105.)

- Sustained concentration and persistence limitations: Dr. Johnston opined that Plaintiff would be moderately limited in his ability to complete a normal workday and week and perform at a consistent pace without an unreasonable number and length of rest periods due to interruptions from psychologically based symptoms. (*Id.*) The psychologist concluded that Plaintiff would have little difficulty in concentration and persistence overall because during mental status testing, Plaintiff was able to concentrate and recall six digits and three out of five items, complete simple calculations, and complete serial 7's. (*Id.*)

- Adaptive limitations: Dr. Johnston found that Plaintiff would be moderately limited in his ability to respond appropriately to changes in the work setting. (Tr. 106.) She explained that the limitation was based on Plaintiff's symptoms of anxiety, which occurred even without the pressures of a work setting. (*Id.*) She opined that Plaintiff was likely to become more anxious under the pressures of a competitive work environment. (*Id.*)

Dr. Johnston concluded the report by providing the following mental RFC: Plaintiff could

7

complete simple, routine to moderately complex tasks, defined as one to four-step tasks. (Tr. 106.) Plaintiff required a workplace without strict daily quota requirements, and could have no more than limited interaction with the general public, coworkers, and supervisors. (*Id.*) On May 14, 2014, state agency psychologist Karen Steiger, Ph.D., conducted a second review of the record and affirmed Dr. Johnston's opinion. (Tr. 143.) Dr. Steiger's assessment does materially differ from Dr. Johnston's report.

**C.    Hearing Testimony**

    **1.    Plaintiff's Hearing Testimony**

At this juncture Plaintiff contests the ALJ's evaluation of only his mental impairments. As a result, this Court will discuss Plaintiff's testimony as it relates to his mental health. Plaintiff testified that he usually spent most of the day alone because he did not like to be around others. (Tr. 60.) He was living in his own home, but had previously lived with friends or an uncle. (Tr. 60-61.) He would eat breakfast and occasionally read the newspaper. (Tr. 63.) He went to the market for groceries once a week. (*Id.*) Plaintiff often spent time thinking about his problems and his anxiety. (Tr. 64.) He attempted to complete household chores like cleaning, but experienced difficulty due to physical pain, inability to concentrate, and poor memory. (Tr. 65-66.)

At some point in 2012, Plaintiff worked for six to seven months on an assembly line in Philadelphia. (Tr. 35-36.) On of his primary duties was to move defective ceiling tiles from the end of the line onto a tow motor. (Tr. 36.) Plaintiff used the tow motor to drive the tiles to a freight truck for further transportation. (*Id.*)

### 2. Vocational Expert's Hearing Testimony

Brett Salkin, a vocational expert, testified at Plaintiff's hearing. The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and work experience. (Tr. 68.) The individual would be able to perform light work with the additional limitations of standing and walking for a maximum of four hours. (*Id.*) The individual could never climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs; and was unlimited in his ability to balance, but could perform all other postural activities frequently. (Tr. 68-69.) The individual could reach overhead frequently and must avoid all unprotected heights. (Tr. 69.) The individual could interact with the general public, coworkers, and supervisors constantly, but on a superficial basis, defined as speaking and signaling to receive instructions, carry out instructions, ask questions, and serve. (*Id.*) The individual would be precluded from more intense social interactions such as collaborating, mentoring, and persuading, and would be limited to work that is routine in nature with few changes. (*Id.*) The VE testified that the individual would be able to perform such jobs as an office helper, order filler, and bench assembler. (Tr. 69-70.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education, or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since January 29, 2012, the alleged onset date.

3. The claimant has the following severe impairments: osteoarthritis and degenerative joint disease of the right knee, lumbar degenerative disc disease, diabetes mellitus with neuropathy, mood disorder, anxiety, substance abuse, and alcohol related seizures.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with the following additional limitations: stand and walk four hours of an eight-hour workday; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; is unlimited in balancing and other postural activities are limited to frequently; can frequently reach overhead bilaterally, no other limitations on the use of hands and arms; should avoid all unprotected heights; can understand, remember, and carry out simple instructions constantly; can interact with the general public, co-workers, and supervisors constantly, but on a superficial basis as defined as speaking and signaling to receive instructions, carry out instructions, ask questions, and serve; would be precluded from more intense social interactions such as collaborating, mentoring, and persuading; and would be limited to work that is routine in nature with few changes.

6. The claimant is unable to perform any past relevant work.

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 29, 2012, through the date of this decision.

(Tr. 12-22.)

## V.  LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

## B. Plaintiff's Assignments of Error

### 1. The ALJ's Evaluation of Nurse Grippi's Opinion

Plaintiff argues that the ALJ did not adequately weigh the opinion of nurse Grippi. In November 2014, nurse Grippi completed a medical source statement and opined that Plaintiff suffered from a number of marked and extreme mental limitations. (Tr. 798-99.) Plaintiff contends that nurse Grippi's limitations are supported by her treatment notes and the ALJ ought to have incorporated the limitations into the RFC.

As Plaintiff acknowledges in his Brief on the Merits (Plaintiff's Brief ("Pl.'s Br.") 10), a nurse is not a medical source entitled to controlling weight, and the ALJ has the discretion to determine the proper weight to accord to opinions from such "other non-medical sources." See *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). Nonetheless, Social Security Ruling 06-3p explains that opinions and other evidence from medical sources who are not "acceptable medical sources," like nurses, are still relevant to the ALJ's determination of a claimant's RFC:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03p, 2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2006). Furthermore, Social

Security Ruling 06-03p provides that when evaluating opinion evidence from medical sources who are not "acceptable medical sources," certain factors should be considered,[2] such as:

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;
- The degree to which the source presents relevant evidence to support an opinion;
- How well the source explains the opinion;
- Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
- Any other factors that tend to support or refute the opinion.

*Id.* at *4-5.

      Here, the ALJ sufficiently explained why she gave nurse Grippi's opinion little weight. The ALJ reasoned that nurse Grippi's treatment notes did not support the severe limitations the nurse recommended in her medical source statement. (Tr. 20.) The ALJ's reasoning finds substantial support in the record. As the ALJ explained, nurse Grippi's initial January 2014 psychological evaluation showed some symptom severity, but after Plaintiff began receiving treatment, his condition improved with treatment compliance. (Tr. 14.) For example, the ALJ pointed out that Plaintiff's more serious symptoms subsided. (Tr. 20.) More specifically, the ALJ recounted Plaintiff's report to nurse Grippi that medication helped to alleviate his hallucinations. (*Id.*) The ALJ further noted that Plaintiff denied suicidal and homicidal ideation, which he had experienced in the past. (*Id.*) The ALJ acknowledged that treatment notes included Plaintiff's continued reports of depression, poor memory, and flashbacks, but these

---

    [2]    Not every factor for weighing evidence will apply in every case. SSR 06-03p, 2006 WL 2329939, at *5 (S.S.A. Aug. 9, 2006).

14

reported symptoms were not so severe as to support the extreme limitations nurse Grippi recommended. (*Id.*) In addition to the fact that Plaintiff's subjective complaints to the nurse failed to sufficiently support the serious limitations, the ALJ also assessed that the nurse's notes contained few objective findings that would support the degree of limitations she opined.[3] (Tr. 20.) As the ALJ sufficiently explained her reasoning with regard to nurse Grippi's opinion, Plaintiff's argument fails.

### 2. The ALJ's RFC Finding

Plaintiff argues that the ALJ's RFC finding is flawed because it fails to account for his moderate deficits in concentration, persistence, and pace. More specifically, Plaintiff contends that state agency reviewing psychologists, Drs. Johnston and Steiger, concluded that Plaintiff could not perform work that involved strict daily quota requirements, but the ALJ failed to include such a limitation in the RFC. The Commissioner contends that the ALJ sufficiently explained why she did not include a limitation on daily work quotas in the RFC. For the reasons that follow, Plaintiff's argument is well taken.

In their RFC assessments, Drs. Johnston and Steiger opined that Plaintiff was able to complete simple, routine to moderately complex tasks, but in a workplace

---

[3] Plaintiff cites to *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1071 n.3 (6th Cir. 1992) for the proposition that an ALJ should not discount psychiatric evidence simply because it is based on the subjective complaints of claimant, because psychiatric reports do not easily lend themselves to the same degree of substantiation as other medical impairments. Here, in contrast, the ALJ based her decision to discount nurse Grippi's opinion not simply because it was based on Plaintiff's complaints. The ALJ also relied on Plaintiff's improvement over time with treatment.

15

without strict daily quota requirements. (Tr. 19.)  In her decision, the ALJ explained that she afforded "some weight" to Drs. Johnston and Seiger's opinions for two reasons. (Tr. 19.)  First, the ALJ explained that the psychologists were inconsistent in explaining their conclusions with regard to the memory limitations they assigned. (*Id.*)  Second, the ALJ explained that the psychologists' finding that Plaintiff would become more anxious under the pressure of a competitive work environment was not consistent with Plaintiff's ability to perform his most recent job that was "high demand." (*Id.*)   When formulating the RFC, the ALJ did not include any limitations that would accommodate the psychologists' limitation on daily quotas. (Tr. 16.)

It is well established that an ALJ is not required to discuss each and every piece of evidence in the record for her decision to stand.  *See, e.g., Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004).  However, where the opinion of a medical source contradicts her RFC finding, an ALJ must explain why she did not include its limitations in her determination of a claimant's RFC.  *See, e.g., Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (Lioi, J.)  ("In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis.").  Social Security Ruling 96-8p provides, "[t]he RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996).

16

Here, the ALJ did not discuss why she omitted the quota limitation Drs. Johnston and Steiger assigned to Plaintiff. Because the ALJ's calculation of Plaintiff's RFC was less restrictive than the state agency psychologists' limitation, and therefore contradicted the psychologists' opinions, S.S.R. 96-8p required the ALJ to explain her decision not to include the psychologists' limitation in Plaintiff's RFC.[4]

The Commissioner argues that the ALJ adequately explained why she failed to credit Drs. Johnston and Steiger's opinions. The ALJ's decision, however, does not explain why she rejected the quota limitation. The ALJ's rationale for awarding some weight to the psychologists' opinions addresses Drs. Johnston and Steiger's memory

---

[4] Plaintiff cites to *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010), to support his contention that the ALJ's RFC did not sufficiently address the speed- and pace-based restrictions that the record supports. In *Ealy*, a state agency psychological consultant limited the claimant's ability to sustain attention to complete simple repetitive tasks to "[two-hour] segments over an eight-hour day where speed was not critical." *Ealy*, 594 F.3d at 516. The ALJ, however, limited the claimant only to simple, repetitive tasks without any additional time-based limitations. Accordingly, the Sixth Circuit found that the ALJ failed to adequately capture the claimant's limitations in concentration, persistence, and pace. *Id.* *Ealy* undoubtedly stands for the proposition that an ALJ's hypothetical to a VE must adequately describe a claimant's limitations in order to serve as substantial evidence in support of the ALJ's conclusions. *Id.* at 517. *Ealy*, however, "does not require further limitations in addition to limiting a claimant to 'simple, repetitive tasks' for every individual found to have moderate difficulties in concentration, persistence, or pace." *Jackson v. Comm'r of Soc. Sec.*, No. 1:10-CV-763, 2011 WL 4943966, at *4 (N.D. Ohio Oct. 18, 2011) (Boyko, J.). Rather, "*Ealy* stands for a limited, fact-based ruling in which the claimant's particular moderate limitations required additional speed- and pace-based restrictions." *Id.* at 4. Here, the record supports Plaintiff's contention that psychologists recommended an additional speed- and pace-based limitation that the RFC does not accommodation. Both state agency psychologists opined that Plaintiff could not meet daily quota requirements.

17

and adaptation[5] limitations, but the ALJ's decision does not give this Court insight as to why the ALJ rejected the quota limitation.

The Commissioner argues that the ALJ's statement that Plaintiff previously performed a job in Philadelphia that was "high demand" constitutes a reason for declining to adopt the psychologists' quota limitation.[6] The Commissioner asserts that Plaintiff testified that this job was performed on an assembly line, and thus, the position involved assembly line time pressures. Yet, Plaintiff's testimony describing the job does not make it clear that he was required to meet daily quotas. Moreover, the ALJ did not explain that Plaintiff's work history motivated her to omit the quota limitation from the RFC. See Berryhill v. Shalala, 4 F.3d 993, *6 (6th Cir. Sept. 16, 1993) (unpublished opinion) ("[A] simple but fundamental rule of administrative law . . . is . . . that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action.") (internal citations omitted). In addition, Plaintiff performed this job in 2012. As a result, Drs. Johnston and Steiger

---

[5]     The ALJ commended on the psychologists' assessment of Plaintiff's anxiety in the workplace. The psychologists evaluated how Plaintiff's anxiety resulted in adaption limitations. (Tr. 106, 143.)

[6]     The Commissioner also asserts that the ALJ noted that Plaintiff was able to concentrate and recall six digits during a psychological examination. This statement on its own does not give adequate insight as to why the ALJ rejected the quota limitation. The state agency psychiatrists noted that Plaintiff could recall six digits during his mental status examination, but nevertheless concluded that he could not meet strict daily quotas. (Tr. 105-06, 142-43.)

were aware of this position when they reviewed the record in September 2013 and May 2014. The psychologists nevertheless concluded that Plaintiff could not meet daily quota requirements.

Accordingly, on remand, the ALJ should either adopt the limitation on strict daily quotas that Drs. Johnston and Steiger assigned or explain her decision not to adopt it. If the ALJ does adopt the limitation, the ALJ should obtain additional evidence to determine whether an individual with that limitation would be precluded from working in jobs available in the national economy.

## VI.  CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be REVERSED and REMANDED for proceedings consistent with this opinion.

s/ *Nancy A. Vecchiarelli*<br>U.S. Magistrate Judge

Date: January 12, 2016

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**